J-A30004-17

2018 PA Super 347

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES P. MCCULLOUGH | |
| Appellant | No. 233 WDA 2016 |

Appeal from the Judgment of Sentence Entered December 17, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No.: CC2009-10522

BEFORE:  SHOGAN, STABILE, JJ., and FORD ELLIOTT, P.J.E.

OPINION BY STABILE, J.:                    FILED  DECEMBER 19, 2018

Appellant Charles P. McCullough ("McCullough") appeals from the December 17, 2015 judgment of sentence entered in the Court of Common Pleas of Allegheny County ("trial court"), following his bench convictions for five counts of theft by unlawful taking and five counts of misapplication of entrusted funds.[1]   Upon review, we remand to the trial court for further proceedings.

Sometime in early 2006, the now-deceased victim Shirley H. Jordan ("Jordan"), a nearly ninety-year-old widow without any children who lived in a senior living facility, engaged the legal services of McCullough.  Jordan, whose assets were valued at approximately fourteen million dollars, executed a power of attorney in favor of McCullough, who acted as her agent and co-trustee of her trust.  Subsequently, he was charged with twenty-four crimes

_____

[1] 18 Pa.C.S.A. §§ 3921(a) and 4113(a), respectively.

in connection with his improper use of his status as power of attorney for Jordan to misappropriate her funds. Specifically, McCullough was charged with seven counts of theft by unlawful taking, two counts of theft by deception, one count of criminal conspiracy to commit theft, nine counts of misapplication of entrusted funds, two counts of false reports to law enforcement authorities, one count of unsworn falsification to authorities, one count of tampering with public records, and one count of failure to disclose financial interests.[2]

On December 29, 2014, McCullough filed a petition for writ of habeas corpus, seeking to dismiss with prejudice the charges filed against him. On April 7, 2015, Senior Judge Lester G. Nauhaus ("Judge Nauhaus") conducted a hearing on the petition,[3] at which McCullough's trial counsel, Jon Pushinsky ("Attorney Pushinsky"), notified Judge Nauhaus that McCullough would "go non-jury." N.T. Hearing, 4/7/15, at 15. Following the hearing, Judge Nauhaus granted in part and denied in part the habeas petition. Specifically, Judge Nauhaus granted habeas relief only with respect to count 15, i.e., a charge for theft by deception.

The case proceeded to a bench trial before Judge Nauhaus, that began with McCullough being colloquied on his decision to waive his right to a jury trial. N.T. Trial, 4/9-4/14/15, at 40-43. McCullough also executed a written

_____

[2] 18 Pa.C.S.A. §§ 3921(a), 3922, 903(a)(1), 4113(a), 4906, 4904, and 4911, and 65 Pa.C.S.A. § 1104, respectively.

[3] Our review of the docket reveals that sometime in 2014 or early 2015, prior to trial, Judge Nauhaus was assigned to this case.

waiver of his right to a jury trial. See Waiver of Jury Trial, 4/13/15, at 1-4. At the conclusion of trial, Judge Nauhaus found McCullough guilty of five counts of theft by unlawful taking and five counts of misapplication of entrusted property. See N.T. Trial, 7/31/15, at 137. Judge Nauhaus scheduled sentencing for November 9, 2015.

On October 23, 2015, Attorney Pushinsky filed a motion to withdraw from the case and to continue the November 9, 2015 sentencing to allow McCullough time to secure substitute counsel. Attorney Pushinsky alleged that because of "material differences regarding case management, strategy and direction" between McCullough and him, a "rift" between them had developed. Motion to Withdraw, 10/23/15, at ¶ 5. Attorney Pushinsky further alleged that their good-faith attempts to resolve their differences were unsuccessful. Id. at ¶ 6. Attorney Pushinsky claimed that, as a result of the rift and the erosion of the attorney/client relationship, his withdrawal from the case was "mandated." Id. at ¶ 7. Attorney Pushinsky further claimed that he could "no longer effectively represent McCullough," whose "trust" he had "lost." Id. at ¶ 8. Attorney Pushinsky also asked the court to continue the sentencing hearing so that McCullough could conclude his search for substitute counsel, who, once engaged, would need sufficient time to prepare for sentencing. Id. at ¶¶ 11-12.

On November 3, 2015, a hearing on Attorney Pushinsky's motion was held before Judge Nauhaus, who observed:

> Three months after I set this case down for a hearing, I received [Attorney Pushinsky's] motion of defense counsel to withdraw his appearance and to continue sentencing so as to allow [McCullough] to secure substitute representation. [Attorney Pushinsky] decided that after three months he and his client were having—this is [a] quote—"a rift between attorney and client."
>
> [Attorney Pushinsky] has indicated that he and his client have made good-faith efforts to resolve their differences and repair the rift and these efforts were unsuccessful. The [c]ourt has been practicing in [the] criminal division for a long time and understands fully what happens between a verdict and a sentencing and what happened insofar as counsel's duties.

N.T. Hearing, 11/3/15, at 3-4. Attorney Pushinsky notified Judge Nauhaus that McCullough had arranged for substitute representation by Megan Will, Esquire ("Attorney Will"). Id. at 7. Attorney Will, who was present at the hearing, informed Judge Nauhaus that she needed thirty days to prepare for sentencing, as McCullough had retained her "within the past week." Id. at 8-9. Judge Nauhaus asked Attorney Will whether she had seen the sentencing guidelines and she replied "no." Id. at 9. Judge Nauhaus then stated:

> A week ago. It's almost impossible not to be able to find them. I can tell you the standard range sentence for each one of the felonies is zero to nine months' incarceration. Zero to nine months' incarceration. That's the standard range. There are five of them. If I stay within the standard range, I can sentence him to [forty-five] months minimum. What else do you need to know?

Id. Judge Nauhaus further stated that he would allow Attorney Will to review the presentence investigation report. Id. Attorney Will then informed the trial court that she would need to subpoena McCullough's wife, a commissioned judge on the Commonwealth Court of Pennsylvania. Id. at 9-11. In response, Judge Nauhaus stated that McCullough's wife did not need

a subpoena, "unless there's a complete rift in that relationship. And if there is, then give her a subpoena. You get a whole tablet of them downstairs." Id. at 10.

McCullough eventually informed Judge Nauhaus that Attorney Will's engagement is contingent on Attorney Pushinsky's withdrawal from the case given Attorney Pushinsky's "conflict of interest." Id. at 12-13. McCullough explained:

> We intend to file a motion before the [c]ourt, not just extraordinary relief, that [Attorney Pushinsky] is going to be a fact witness to. He will also be a fact witness to any post-sentencing motions that we file. [Attorney Pushinsky] and I have been trying to resolve this for a time, and he has steadfastly refused to file a motion that I have requested that he file to this [c]ourt beforehand. He cannot continue to represent me. My understanding with [Attorney Will] is that she would only come into the case if she had the time to prepare this motion. She's not going to be able to do it between now and Monday.
>
>   . . . .
>
> And, Your Honor, from [the] middle of September on, [Attorney] Pushinsky and I have not been able to get past this issue. I tried repeatedly to get him to file this motion. He disagrees with me. I believe his disagreement is based on a conflict due to the fact that he will be a fact witness to it. I need to have other counsel.

Id. at 13-14. In response, Judge Nauhaus informed McCullough that if the trial court were to grant the continuance and, therefore, delay sentencing, then the court would revoke McCullough's bond. Id. at 14-15 ("You'll be incarcerated for lack of having bail. I let you out on bail at the time you were convicted as a courtesy to you.").

McCullough then informed the trial court that, after conferring with Attorney Will, he decided to have her "replace [Attorney] Pushinsky." Id. at 16. Judge Nauhaus granted Attorney Pushinsky's motion to withdraw and denied the continuance, thereby preserving the scheduled sentencing date of November 9, 2015.

On November 5, 2015, McCullough, through his counsel, filed a "Petition for Judicial Recusal," alleging that Judge Nauhaus engaged in ex parte communications with Attorney Pushinsky and "other court officers" prior to rendering the guilty verdicts. Petition for Judicial Recusal, 11/5/15, at ¶ 2. McCullough alleged that Attorney Pushinsky informed him of the alleged ex parte communications. Id. at ¶ 3. McCullough specifically alleged that, on December 29, 2014, after Attorney Pushinsky petitioned the trial court for the issuance of a writ of habeas corpus, Attorney Pushinsky called McCullough to inform him that Judge Nauhaus "just called me and yelled at me for filing the Habeas Petition." Id. at ¶¶ 4-5. McCullough alleged that, in response, he stated to Attorney Pushinsky that Attorney Pushinsky "needed to move to have [] Judge Nauhaus recused from [McCullough's] case." Id. at ¶ 6. Attorney Pushinsky failed to seek recusal. Id. McCullough further alleged that any ex parte communication between Judge Nauhaus and Attorney Pushinsky violated Rule 2.9(A) of the Pennsylvania Code of Judicial Conduct. Id. at ¶ 7. McCullough claimed that, even though Judge Nauhaus had "ample

basis" under the law to grant the habeas petition, Judge Nauhaus dismissed only one of the charges filed against McCullough.[4]  Id. at ¶ 9.

McCullough alleged that a second ex parte communication occurred between Judge Nauhaus and Attorney Pushinsky.  Prior to trial, Attorney Pushinsky informed McCullough that Judge Nauhaus told Attorney Pushinsky through a mutual friend "to go non-jury."  Id. at ¶ 10.  According to McCullough, Attorney Pushinsky informed him that "Judge Nauhaus preferred jury trials only in capital cases" and that McCullough "'would not be sandbagged' if he elected to have a nonjury trial."  Id.  McCullough claimed that Attorney Pushinsky told him "not to repeat this ex parte communication to anyone."  Id. at ¶ 11.  McCullough claimed that prior to learning of Judge Nauhaus's ex parte communication with Attorney Pushinsky, McCullough did not wish to waive his right to a jury trial.  Id. at ¶ 12.  McCullough claimed that he waived his right to a jury trial only because he "feared repercussions" if he did not follow Judge Nauhaus' directive to go non-jury.  Id.  McCullough pointed out that Judge Nauhaus's directive for a bench trial was reinforced by his comments at the April 7, 2015 status conference, which occurred six days prior to trial.  Id. at ¶ 13 (citing N.T. Status Conference, 4/7/15, at 15-16).

McCullough alleged a third ex parte communication, which purportedly occurred during the pendency of his trial and prior to McCullough's presentation of his defense, i.e., six to seven weeks before Judge Nauhaus

_____

[4] The habeas petition filed by Attorney Pushinsky sought the dismissal of the original 19 criminal charges that had been filed against McCullough.

rendered the trial court's verdict. Id. at ¶ 14. McCullough alleged that "an acquaintance of [McCullough], who has been involved in Allegheny County politics for some time and who is familiar with [the] courthouse staff, told [McCullough] that he had had a conversation with an individual who works in the courthouse and who knew [Judge Nauhaus's] secretary." Id. Specifically, McCullough alleged that the secretary "advised the individual that [Judge Nauhaus] was of the mind that the case was not proven, but after a conversation between [Judge Nauhaus] and his secretary, they agreed that a conviction of the five counts dealing with the checks had to occur." Id. McCullough further claimed that Judge Nauhaus convicted him "of the charges associated with five particular checks," as foretold by the ex parte communication. Id. at ¶ 15.

McCullough alleged that, despite his many ongoing requests, Attorney Pushinsky "refuses to identify the mutual friend involved in the [second] ex parte communication, but has indicated that, if called to testify, he would identify the mutual friend." Id. at ¶ 16. McCullough also alleged that "[t]he acquaintance has also refused to identify the source of his information for the [third] ex parte communication, but if ordered by the Court at a hearing, he would identify that person." Id. at ¶ 17.

McCullough asserted that the allegations contained in the recusal petition "coupled with anticipated witness testimony establish that bias, prejudice and/or unfairness sufficient [] to warrant the recusal of Judge Nauhaus from [McCullough's] case." Id. at ¶ 30. In addition, McCullough

noted that allegations of ex parte communications between Judge Nauhaus and other members of the court and court staff "necessitate recusal." Id. at ¶ 31. Specifically, given the allegations contained in his recusal petition, McCullough asserted a violation of his due process rights under the United States and Pennsylvania constitutions insofar as he was not "afforded a right to a [trial] before a neutral factfinder or a right to a jury trial."[5] Id. at ¶ 34. Thus, recognizing a conflict in testimony, McCullough requested "a hearing by a neutral factfinder." Id. at ¶¶ 32-33. McCullough also requested that "Judge Nauhaus recuse himself of his own volition, or, alternatively, grant a hearing on [the recusal petition] so that the matters contained herein may be more fully explored." Id.

On November 9, 2015, on the day of sentencing, Judge Nauhaus addressed McCullough's petition for recusal on the record.

> [The trial court]: Second or third attorney decided he wanted off the case and Mr. McCullough had a brand new lawyer, and they wanted to continue the sentencing. I was frustrated, to be perfectly honest with you, and may well have been short with counsel. There just isn't any reason not to postpone sentencing.
>
> I've looked at your Petition for Judicial Recusal. Please stand. I have some questions for you. Do you know what an ex parte communication is?
>
> [Attorney Will]: I do, Your Honor.
>
> [The trial court]: If I talk to my wife about this case, is that an ex parte communication?

---

[5] McCullough's petition makes clear the relief he seeks is not limited to resentencing, but also may include a new trial.

[Attorney Will]:  Not necessarily, Your Honor.

[The trial court]:  If I have a conversation with Mr. McCullough's attorney, who complains about that?

[Attorney Will]:  In this case it was his attorney.

[The trial court]:  Who complains?  There's no place to sit down. You can't come in.  The district attorney.

[Attorney Will]:  Correct.

[The trial court]:  Right?  Did you see this petition, [Assistant District Attorney John] Fitzgerald?

[ADA Fitzgerald]:  I have not, Your Honor.

[The trial court]:  Well, they're complaining about a conversation that I had with Mr. Pushinsky.  Do you care?

[ADA Fitzgerald]:  I don't know anything about it.

[The trial court]:  Well, the argument is that after he filed his habeas motion, I called him and discussed the matter with him.  I mean, it's characterized by this attorney as being forceful; but whether it was or it wasn't, do you have a problem with that?

[ADA Fitzgerald]:  No, Your Honor.[6]

[The trial court]:  Okay.  Have a seat.  He doesn't have a problem with that ex parte communication, and he's the party that should be complaining, right?

[Attorney Will]:  I understand.

[The trial court]:  Okay.  The other ex parte communications have to do with my communication with a third party and a communication that my secretary had, allegedly, with somebody

_____

[6] In its brief to this Court, the Commonwealth agrees with McCullough that an evidentiary hearing into allegations of improper communications is required. We do not view this position as being inconsistent with the Commonwealth's response to Judge Nauhaus, as the Commonwealth had not yet seen McCullough's petition when responding to the trial court.

else, and a communication I had with my secretary. Are any of those ex parte communications?

[Attorney Will]: I believe that they are, Your Honor.

[The trial court]: How so?

[Attorney Will]: I believe that they were materially impacting this case, that they should not have occurred and that --

[The trial court]: So if I had a conversation with my wife about this case, you would say that's an ex-parte communication?

[Attorney Will]: Your Honor, this was while the trial was ongoing.

[The trial court]: So what?

[Attorney Will]: That's the nature of our pleading, is that this was occurring while the trial was ongoing.

[The trial court]: And? How is that an ex parte communication?

[Attorney Will]: It wasn't just that, Your Honor.

[The trial court]: How was it an ex parte communication? You characterized it as an ex parte communication. How was it an ex parte communication? I have yet -- you have never, in any of these pleadings, indicated that I had a conversation with [the District Attorney], with Mr. Fitzgerald or anybody in the District Attorney's Office, have you?

[Attorney Will]: No, we did not indicate that.

[The trial court]: Those are ex parte communications.[7]

_____

[7] Our Supreme Court has defined the term ex parte as:

On one side only; by or for one party; done for, in behalf of, or on the application of, one party only. A judicial proceeding, order, injunction, etc., is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by any person adversely interested.

- 11 -

[Attorney Will]: We did allege that there was a conversation with Mr. Pushinsky outside of the conversation that you had with the DA outside the presence of counsel. That was the first ex parte --

[The trial court]: How could it have been outside the presence of counsel if I was having a communication with counsel?

[Attorney Will]: The other side was not there, Your Honor.

[The trial court]: He doesn't care.

[Attorney Will]: I believe he said he didn't care about the habeas conversation, not necessarily the nonjury communication.

[The trial court]: Which nonjury communication?

[Attorney Will]: The tell Pushinsky to go nonjury communication that we alleged in our pleading.

[The trial court]: That was a conversation I had with a friend of mine, wasn't it?

[Attorney Will]: I don't know, Your Honor. I don't know --

[The trial court]: That's what you allege, isn't it?

[Attorney Will]: That is what I alleged, absolutely.

[The trial court]: Then it's a communication I had with a friend of mine. Where do you draw the line on ex parte communications?

[Attorney Will]: The trial was ongoing.

[The trial court]: So what? Are you telling me that as a judge I'm not allowed to have any communications with anybody about this case? Am I allowed to talk to my law clerk?

_____

Commonwealth v. Carpenter, 725 A.d 154, 168-69 (Pa. 1999) (citation omitted). With exceptions not applicable here, both the Code of Judicial Conduct and Rules of Professional Responsibility prohibit ex parte communications. See Code of Judicial Conduct Rule 2.9, and Rule of Professional Conduct 3.5(b).

[Attorney Will]:   I think that's a little bit different, Your Honor.

[The trial court]:   Why is it different?

[Attorney Will]:   That's the case of employment.  This is a conversation that you're having with third parties that aren't relevant to this case, that aren't witnesses.

N.T. Hearing, 11/9/15, at 3-8.  Even though Judge Nauhaus objected to the characterization of the alleged communications as ex parte communications and believed the recusal matter to be a post-sentence issue, he granted McCullough's request to delay sentencing by thirty days.  Id. at 8-10. Sentencing was rescheduled for December 17, 2015.  He also ordered McCullough to submit a detailed brief on the recusal issue within two weeks from the date of the November 9, 2015 hearing.  McCullough was then colloquied on his decision to delay sentencing beyond the ninety-day period. Id. at 12-14; see Pa.R.Crim.P. 704(A) ("[S]entence in a court shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or nolo contendere.").

On November 12, 2015, the Commonwealth filed a "Request for an Evidentiary Hearing and Appointment of Judge to Preside over [McCullough's] Petition for Judicial Recusal."  The Commonwealth averred that McCullough's recusal petition alleged "material ex parte contacts between This Honorable Court[, i.e., Judge Nauhaus], [Attorney Pushinsky], and unnamed third parties."  Request for Evidentiary Hearing, 11/12/15, at ¶ 2.  The Commonwealth further averred that, "without supporting affidavits from either [the trial court] or Attorney Pushinsky, [McCullough] accuses [t]his

[c]ourt, at a minimum, of engaging in judicial misconduct and by implication, accuses [Attorney] Pushinsky of failing to properly report this judicial misconduct to the proper authorities." Id. at ¶ 3. The Commonwealth noted that, while it may have doubts about the credibility of the allegations contained in the recusal petition, "the allegations alone tend to subject the Allegheny County judiciary to disrepute." Id. at ¶ 4. As a result, the Commonwealth requested that Judge Nauhaus grant its request for an evidentiary hearing and recuse himself from presiding over the hearing. Id. The Commonwealth, however, made it clear that, unless the judge presiding over the evidentiary hearing found merit to McCullough's accusations, there would be no reason for Judge Nauhaus to recuse himself from presiding over McCullough's sentencing. Id.

On November 16, 2015, McCullough filed a response to the Commonwealth's request for an evidentiary hearing. In the two-paragraph answer, McCullough stated that he "joins in the Commonwealth's request to have another judge preside over [McCullough's] hearing for judicial recusal." Response to Evidentiary Hearing, 11/16/15, at ¶ 1. McCullough also requested, without providing any reasons or allegations, that "a judge from outside of Allegheny County" be appointed to preside over the evidentiary hearing. Id. at ¶ 2. On the same day, President Judge Jeffrey A. Manning

("PJ Manning") issued an order scheduling an evidentiary hearing on McCullough's recusal petition for November 19, 2015.[8]

PJ Manning presided over the evidentiary hearing, at which Martin L. Schmotzer and Attorney Pushinsky testified. At the start of the hearing, PJ Manning explained that he was presiding over the hearing because Judge Nauhaus referred the recusal motion to him and to Judge David Cashman, who was the administrative judge of the criminal division. N.T. Hearing, 11/19/15, at 4-5.

Mr. Schmotzer was called to the stand to testify about the third ex parte communication. He testified that he was a friend of McCullough and that he had conversations with McCullough about McCullough's case. Id. at 10. Specifically, Mr. Schmotzer testified that he relayed to McCullough a conversation that "was told to [him] thirdhand." Id. at 11. Mr. Schmotzer explained, "Someone called me up on the phone and asked to meet with me about a conversation they had had, but it wasn't with [Judge Nauhaus]. It was with, you know, that person and the secretary, not the Judge." Id. at 12. The Commonwealth objected, based on hearsay, to the content of the conversation. The trial court sustained the objection. Nonetheless, when pressed by Attorney Will to name the source, Mr. Schmotzer refused to reveal

_____

[8] Given PJ Manning's involvement, it appears that Judge Nauhaus granted the Commonwealth's request for an evidentiary hearing and recused himself from presiding over the hearing.

the source's identity, without asserting any privilege. Id. at 15. As the record

reveals:

Q. Mr. Schmotzer, who was the person that had the conversation with you?

A. Well, first of all, it's Schmotzer. And I'm sorry. You'll have to speak up.

Q. Who was the person that had that conversation with you?

A. I'm not revealing that person to you.

[Attorney Will]: Your Honor, I would—

[The Commonwealth]: Your Honor, I object—

A. The conversation took place—

[The Commonwealth]: Excuse me.

[The trial court]: There's nothing before you.

[The Commonwealth]: Your Honor, I am objecting to this whole line of questioning. It's irrelevant.

[The trial court]: Miss Will.

[Attorney Will]: It is relevant, Your Honor, and the witness is nonresponsive. We're trying to get to the source of the information and what was said and did this happen.

[The trial court]: Remember three, relevance, materiality and competence. Okay. It's relevant, but it's neither material nor competent. He won't even say who it was.

You're excused. Unless you have anything else for him.

[Attorney Will]: Not for Mr. Schmotzer.

[The trial court]: Objection by the Commonwealth is sustained.

Id. at 15-16.

McCullough next called to the stand Judge Nauhaus, who along with his counsel was present in the courtroom. Id. at 16. Judge Nauhaus's attorney objected, arguing that Judge Nauhaus was incompetent to testify under Pa.R.E. 605. Specifically, counsel argued:

> The rule says a presiding judge may not testify as a witness at the trial or other proceeding. Now, we know that—and I've reviewed all of the pleadings in this matter—that both parties in this case have asked for this [c]ourt to or a court to preside over the motion to recuse, and I understand that.
>
>  . . . .
>
> However, in this case the Rule 605 should be read very broadly. When this [c]ourt—if this [c]ourt makes a decision, after hearing all of the evidence, that Judge Nauhaus need not recuse, then Judge Nauhaus becomes a presiding judge. And until and unless he is recused by this Court, he –
>
>  . . . .
>
> he cannot be forced to testify under this rule. He is incompetent. And by subpoenaing him to testify, I believe that it would—and if he did testify, if this [c]ourt ordered him to testify, it would be outside of his competency, but it would also then give the party another reason to ask for his recusal, because he will then become a witness.
>
> And assume for a moment that his testimony would be contrary to the allegations that were made in this recusal petition. Then he becomes an adversary of [McCullough], which he does not want to do.

Id. at 17-19. In response, the Commonwealth stated that it agreed with McCullough's position to have Judge Nauhaus testify at the hearing. The Commonwealth argued:

> Your Honor, as the Court has pointed out, no subpoena was issued. [Judge Nauhaus] is here under a Court Order. But further,

Your Honor, as I read the pleadings of what we were supposed to do today, there is a [Pa.R.Crim.P.] 704(b) issue here as to whether the jury trial waiver was coerced or involuntary because of an alleged communication that Judge Nauhaus made. I think that it's more than just the recusal issue that is at issue here, and I think that Judge Nauhaus referring the recusal motion to you is an acquiescence to him being called as a witness so that we can make an inquiry as to whether that communication ever occurred.

. . . .

The alleged communication on the phone between [Judge Nauhaus] and [Attorney] Pushinsky and the alleged communication that [Judge Nauhaus] sent a mutual friend to [Attorney] Pushinsky.

. . . .

Your Honor, I am at—the Commonwealth has a position that if [Judge Nauhaus] was not going to be called by [Attorney] Will, we would have called him also, Your Honor.

Id. at 19-20. Next, Attorney Will argued that McCullough "could not agree more with" the Commonwealth's position. Id. at 21. In particular, Attorney Will observed that by referring the matter to PJ Manning, Judge Nauhaus "essentially" acquiesced to "having this hearing." Id. PJ Manning, however, disagreed with Attorney Will's observation and remarked:

No, No. That's not the way—he never made any decision on that at all as to whether or not—the law is pretty clear that if the Judge's impartiality might reasonably be questioned under the Rules of Conduct, then the matter should be referred to another judge, basically in the middle here, to make a determination if there is any colorable evidence of such. If I were to find none, there would be no recusal.

. . . .

Judge Nauhaus would go back to being the trial judge in the case. Only if I were to find competent evidence by a preponderance of the evidence that there was actions which could cause his

- 18 -

impartiality to be questioned, then the case would be made for recusal.

. . . .

But, once again, I could only find that. He would have to recuse. I have no authority to recuse him as the trial judge. That's completely personal to him. And even my finding could be rejected by him. That's an issue for the appellate courts. I don't see how we get around Rule 605. It's very clear. The Judge is not competent as a witness in the trial or any other proceeding related thereto.

Id. at 21-23. Thus, applying Rule 605, PJ Manning sustained the objection made by Judge Nauhaus' attorney. Id. at 23.

McCullough next called to the stand Attorney Pushinsky, whom McCullough, on the record, granted a limited waiver of the attorney-client privilege regarding two ex parte communications Attorney Pushinsky had with Judge Nauhaus. Id. at 24-26. Attorney Pushinsky, however, through his counsel, insisted on a complete waiver of attorney-client privilege before answering any questions. As the record indicates:

By Attorney] Will:

Q. Did you file a habeas corpus motion on behalf of Mr. McCullough prior to trial?

A. I did.

Q. When you filed that, did you have a conversation with Judge Nauhaus about it?

A. Upon the advice of ethics counsel, I cannot answer any questions regarding either privileged or attorney/client confidentiality without a full and complete waiver of both of those by Mr. McCullough.

[Pushinsky's Attorney]: That will, Your Honor, be my objection.

[The trial court]:  That will be your objection?

[Pushinsky's Attorney]:  To the question.

[The trial court]:  All right.  At this point the objection is overruled, and I'm directing you to answer.

[Attorney Pushinsky]:  Your Honor, the ruling of a -- an order from a judge overruling an assertion of a privilege is immediately appealable.  I do not want to place myself at risk by Mr. McCullough filing some type of action for violation of the ethics rules.  I would refer the Court to the case of Commonwealth versus Harris, in which the Supreme Court in 2011 held that such orders are immediately appealable.  If Mr. McCullough --

[The trial court]:  Are you aware of the waiver that has been placed on the record?

[Attorney Pushinsky]:  I haven't heard the waiver, but my counsel told me it was a limited waiver, and I have been instructed to ask for a complete and full waiver.

[The trial court]:  You can ask for a complete and full waiver; but because the [c]ourt accepted a waiver on a limited basis and will limit the questioning to the issues, the two limited bases --

[Attorney Pushinsky]:  But I don't know how broad the waiver is, Your Honor, and I can't -- I have to make a decision based upon my understanding of Rule 1.6 and the attorney/client privilege, and so I need a full and complete waiver.

[Attorney Will]:  I would disagree, Your Honor.  We've already placed the waiver on [the] record from my client about the specific communication.  He has agreed that [Attorney] Pushinsky is allowed to talk about that specific communication.  What else is there that we need to do?

[Pushinsky's Attorney]:  Your Honor, there has been no identification of what communication you're talking about.  So my understanding is --

[The trial court]:  I told you we'd do it on a question-by-question basis.  We're not there yet.  So I'm directing [Attorney] Pushinsky to answer until we get to someplace [] you believe is beyond what the waiver is.

- 20 -

[Pushinsky's Attorney]: I understand that, Your Honor, but I believe that Mr. Pushinsky has placed himself in a position, because of the lack of full and complete waiver, to be subject to action by Mr. McCullough against him should Mr. McCullough not like the result of his answers.

[Attorney Pushinsky]: The risk that I see, Your Honor, is that in order to give a full and complete answer may get into things beyond what Mr. McCullough or his counsel is anticipating, and they would claim that's beyond the scope of whatever limited waiver he gave. I can't answer a question. I don't know what they're going to say was covered and not unless I have a full and complete waiver.

(Pause in the proceedings.)

[The Commonwealth]: Your Honor, may I address the Court?

[The trial court]: Yes, sir.

[The Commonwealth]: Your Honor, we have agreed that the waiver goes to the two communications at issue. I will limit my questions to those two issues and the surrounding circumstances around those issues. And if I ask a question that goes beyond that, Miss Will is free to object, because it's her client's privilege. So if he feels that my question has gone beyond what he has allowed me to do by waiving that, he has the obligation at this point in time to raise an objection. If he doesn't raise that objection, he has nothing to complain about in the future.

[Attorney Pushinsky]: Your Honor, I disagree, because it's not just a question. It's the answer --

[The trial court]: Mr. Pushinsky, let's let [your counsel] answer for you.

[Attorney Pushinsky]: I'm sorry, Your Honor.

[The trial court]: You're not sitting on the stand as a witness and advocating your position.

[Pushinsky's Attorney]: Anything leading forth from any answers he gives may not be in the confines of what that waiver was, Your Honor; and, as such, subject Mr. Pushinsky to action by Mr. McCullough.

[The trial court]:   [Attorney] Will --

[Attorney Will]:   The communication that we're discussing --

[The trial court]:   -- it would appear to me, at this juncture in this proceeding, since you have called this witness and he has asserted a privilege, that your client controls; that in order for him to testify further, your client is going to have to do a complete waiver.

[Attorney Will]:   I understand.

[The trial court]:   Or you don't get the testimony.

[Attorney Will]:   The issue that we see, Your Honor, is this is a conversation between Attorney Pushinsky and Judge Nauhaus.  My client wasn't a part of this.

[The trial court]:   It's still sum and substance of your complaint; and as long as [Attorney] Pushinsky, who was your client's lawyer, has asserted his privilege, I don't think I have anywhere to go.

[Attorney Will]:   May I have one moment?

[The trial court]:   Yes.

      (Pause in the proceedings.)

[The trial court]:   [Attorney] Will, keep in mind that all questioning will be bound by the Rules of Evidence; and, as you well know, I'm pretty strict in that regard.  So to the extent that either -- I guess it's only [the Assistant District Attorndy] who has indicated he's not going to ask things outside that framework.  But if he does, then you object, and the [c]ourt will make an appropriate ruling on the objection.

[Attorney Will]:   I understand, and I would actually echo what [the ADA] has said.  We are not going beyond --

[The trial court]:   I understand, but you're going to have -- to  keep this witness on the stand, you're apparently going to have to put a full waiver on.

[Attorney Will]:   My client is not willing to do that, Your Honor.  He's willing to do that, Your Honor.  He's willing to waive --

[The trial court]:  Then you're not going to have the witness.

[Attorney Will]:  I think it's a yes or no answer that I was looking for from Mr. Pushinsky, not anything substantive.

[The trial court]:  Ask the question again.

BY [Attorney] Will:

Q.  Did you have a conversation with Judge Nauhaus after filing the habeas petition?

[Pushinsky's Attorney]:  I'm going to object, Your Honor, to the question.

[Attorney Will]:  It's a yes or no question.  There's nothing --

[The trial court]:  It is.  It is, but he's going to assert his lawyer/client privilege unless there's a complete waiver.

[Attorney Will]:  I just think that's a slippery slope, because if that's the answer to every question --

[The trial court]:  That's going to be, apparently, the answer to every question.

(Pause in the proceedings.)

[Attorney Pushinsky]:  Your Honor, may I get a glass of water?

[The trial court]:  Sure.

Michelle, get him a glass of water.

[Attorney Pushinsky]:  Thank you, Judge.

[Attorney Will]:  Your Honor, may I have a recess to confer with my client, please?

[The trial court]:  Certainly.  Take a ten-minute recess.

[Attorney Will]:  I appreciate it.  Thank you very much.

(Brief recess was taken.)

[The trial court]: [Attorney] Will.

[Attorney Will]: I thank Your Honor for the recess. After conferring with my client, there will not be a full waiver, Your Honor. I think it's not in his best interest. He has agreed. We would again assert Rule 1.6 of the Rules of Professional Conduct,[9] which do not require the full waiver. I understand that Your Honor has stated that the witness is not going to testify without --

[The trial court]: Well, I don't know which of the two prongs you're now speaking to, but I assume it's the conversation that allegedly occurred --

[Attorney Will]: On the habeas petition.

[The trial court]: I'm not sure I follow where you're going on that, because so far -- but as to the other issue, you're alleging that Mr. Pushinsky -- essentially you're alleging that he committed unethical conduct by having an ex parte communication with a judge and then communicating that to your client.

[Attorney Will]: I would agree with that.

[The trial court]: So that would seem to me to justify the right of Mr. Pushinsky, because he has a right here, too, to be able to answer with regard to things that are other than just that bare boldfaced allegation.

[The Commonwealth]: Your Honor, we have agreed to limit our cross-examination. But, Your Honor, you're on the rules committee, and Mr. Pushinsky is an appellate lawyer. I think that Mr. McCullough needs to understand something. This is a [Rule] 704(b) hearing.

[The trial court]: Right.

[The Commonwealth]: And this claim is rapt [sic] in effectiveness.

_____

[9] Rule of Professional Conduct 1.6(c) provides in part: "A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary: . . . (4) to respond to allegations in any proceeding concerning the lawyer's representation of the client."

[The trial court]: They're almost to the 22 points of a PCRA.

[The Commonwealth]: Yeah. And, Your Honor, this is the only time he is going to be able to raise this issue unless, in post-sentence motions, he forever waives his right to a PCRA hearing under Commonwealth v. Holmes and Bomar and a judge actually allows him to do it. It's an abuse of discretion standard, and a judge doesn't have to let him do that.

He needs to understand today if he does not go forward with this hearing, this issue is not going to be -- and I'm talking about the improper communications and how they affected his willingness to waive his right to a jury trial. He is never going to be able to raise that issue for at least two or three years, until his direct appeal is exhausted. So he needs to understand that. This is the time to do that, because under the law he can't do it on direct appeal.

[Attorney Will]: We have had that conversation, Your Honor. Mr. McCullough is fully aware of that. I just feel it's very reckless to give this total waiver, this tell-all waiver, when that's not what is required. We have given what has been required.

[The trial court]: I think it is required under the circumstance here. That's my ruling.

[Attorney Will]: Okay. I understand, Your Honor.

[The trial court]: That means Mr. Pushinsky will not be a witness.

[Attorney Will]: That is correct. Then I think we're back again to the point where Judge Nauhaus's testimony is necessary. Because if we have --

[The trial court]: This isn't a civil proceeding where you call the opposing party because you can. This isn't like that. You have an obligation -- you and Mr. McCullough have an obligation up front to establish by competent evidence the allegations that you made in this petition, which are very serious allegations.

[Attorney Will]: Understood.

[The trial court]: And so far I have found nothing that's been presented in that regard.

- 25 -

[Attorney Will]: I think you found nothing because there have been barriers presented, Your Honor, but I understand what you're saying.

[The trial court]: Well, I just want you to know where we are.

[Attorney Will: I would still ask that you take judicial notice of the record in this case, specifically from November 3, November 9 and a few proceedings throughout the trial. I've provided the same to [the ADA]. We have also provided the same to your law clerk.

[The trial court]: You're referring to the transcripts?

[Attorney Will]: Yes, Your Honor, that is correct.

[The trial court]: I have those. I have those. I've reviewed some of them, and certainly I've reviewed the ones that relate to the waiver of Jury Trial.

[Attorney Will]: I appreciate it. Other than the evidence that we are trying to present, Your Honor, I think there's also a question of: If Judge Nauhaus's conduct has been referred to the Judicial Conduct Board --

[The trial court]: I can't hear you.

[Attorney Will]: If Judge Nauhaus's conduct has been referred to the Judicial Conduct Board, we have sentencing scheduled before him on December 17. I don't think its proper for him to be the Judge that is sentencing my client when his impartiality and his ethics are being called into question. That was not done by us.

[The trial court]: Miss Will, if I have one, I have 27 letters in my top desk drawer from the Judicial Conduct Board saying that, "You may know that something was referred to us about this and dismissed." Okay? That's the way they operate. The Judicial Conduct Board has nothing to do with the proceedings in this case.

[Attorney Will]: All right.

[The trial court]: So where are we?

[Attorney Will]: I don't think we can present anything, Your Honor. We've been handcuffed by certain rules today, and we have been handcuffed by certain rulings from Your Honor. So we appreciate your time.

[The trial court]: I don't use handcuffs, [Attorney] Will. I've made legal rulings that I suppose you can appeal if you want to.

[Attorney Will]: Understood.

[The trial court]: All right. At this point, Mr. Pushinsky, you are excused --

[Attorney Pushinsky]: Thank you, Your Honor.

Id. at 29-43. Following McCullough's presentation of witness testimony, PJ Manning concluded that McCullough failed to produce any evidence to call into question Judge Nauhaus's impartiality. Id. at 45. PJ Manning reasoned that the allegations in the recusal petition, absent any evidence, were "scurrilous." Id. at 46. PJ Manning thus denied and "vacated and discontinued" McCullough's recusal petition. Id. at 47. Even though PJ Manning denied the recusal petition, Judge Nauhaus also issued an order denying McCullough's recusal petition on December 10, 2015.

Sentencing occurred, as scheduled, on December 17, 2015. Instead of Judge Nauhaus, Judge David R. Cashman ("Judge Cashman") presided over the sentencing hearing. Judge Cashman explained that "Judge Nauhaus did not recuse himself but, rather, asked that the case be reassigned for the purpose of sentencing because of a health issue that he had, and President

Judge Manning then assigned the case to me for the purpose of sentencing."[10] N.T. Sentencing, 12/17/15, at 38. On the five counts of theft by unlawful taking, Judge Cashman sentenced McCullough to six to twelve months' incarceration on each count to run consecutively. Id. at 39-40. Judge Cashman did not impose any additional penalty for the five counts of misapplication of entrusted property. Id. at 40. McCullough's aggregate sentence was 30 to 60 months' imprisonment.

McCullough timely filed post-sentence motions, asserting, inter alia, that he was entitled to a new trial because of "the improper handling and disposition of [his] motion to recuse [Judge Nauhaus]." Amended Post-Sentence Motion, 12/30/15, at 12. McCullough asserted that the improper handling of his petition "resulted in the commission of a structural error," id. at ¶ 26, which he identified as follows:

  a. failing to assign an out of county judge to rule upon the [recusal petition],

  b. failing to require Judge Nauhaus give testimony about the basis of the recusal at the hearing before [PJ] Manning,

  c. failing to require Judge Nauhaus to otherwise address the allegations in the recusal motion,

  d. failing to require [Attorney] Pushinsky to testify about the ex parte communications,

_____

[10] We observe that Pennsylvania law makes clear that it is generally preferable for the same judge who presided at trial to preside over post-conviction proceedings. Familiarity with the case will likely assist the proper administration of justice. Commonwealth v. Lambert, 765 A.2d 306, 362 (Pa. Super. 2000) (quotation marks and citations omitted).

    e.  failing to require [Mr.] Schmotzer to identify the individual who had more direct knowledge about the allegedly improper communication/predetermination occurring at mid-trial,

    f.  failing to grant the recusal of Judge Nauhaus on any of the alternative bases set forth in [McCullough's] motion, and

    g.  reassigning the case to another judge for sentencing in a manner that either violates the requirements of Rule 700 of the Pennsylvania Rule of Criminal Procedure, or preserves the influence on the sentencing of a judge who should have been recused from any contact with it.

Id. at ¶ 54. Based on the foregoing, McCullough argued that his substantive and procedural "due process" rights "were wholly compromised in this case." Id. at ¶ 55. As a result, McCullough once again requested, among other things, that "[t]he sentence . . . be vacated, and upon proper hearing, of the recusal motion, [McCullough] should be afforded recusal, and consequently, a new trial by jury." Id. at ¶ 57. Following a hearing, Judge Cashman denied McCullough's post-sentence motions on February 5, 2016. Judge Cashman, however, granted McCullough bond pending appeal on the condition that McCullough surrender his passport and not leave the jurisdiction without the court's prior approval.

McCullough timely appealed to this Court. Judge Cashman ordered McCullough to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. McCullough complied, raising approximately forty assertions of error, spanning twenty-four pages. In particular, McCullough reasserted due process violations, and challenged the disposition of his recusal petition. In

response, Judge Cashman issued a detailed Pa.R.A.P. 1925(a) opinion, denying McCullough relief.

On appeal, McCullough presents the following issues, reproduced here verbatim:

 1. Whether the evidence was insufficient as a matter of law on the counts charging theft by unlawful taking, 18 PACS § 3921, when the Commonwealth failed to prove beyond a reasonable doubt that [McCullough] knowingly took the property of the alleged victim unlawfully, since [McCullough] was a co-trustee of the alleged victim's estate, her attorney, and a person who held (and believed he held) a valid power of attorney authorizing him to request that co-trustees issue checks from her estate?

2. Whether the evidence was insufficient as a matter of law on the counts charging misapplication of entrusted funds, 18 PACS § 4113, when the Commonwealth failed to prove beyond a reasonable doubt that [McCullough] requested that donations be made from the estate of an alleged victim for whom he was a fiduciary knowing that the donations were unlawful and involved a substantial risk of loss and detriment to the owner?

[III.] Whether serious procedural errors occurred in the litigation of [McCullough's] motion for recusal which alleged that three ex parte communications by [Judge Nauhaus] substantially prejudiced him when,

a) [Judge Nauhaus] refused to affirm or deny whether the ex parte communications actually took place;

b) the judge presiding over the hearing on the [recusal] motion:

i. improperly excused [Judge Nauhaus] from testifying about the communications by erroneously interpreting Rule 605;

ii. improperly excused [Attorney Pushinsky] from testifying about the communications by ruling that [McCullough] had to waive the entirety of his

attorney/client privilege as a condition for counsel's testimony on the discreet matters at issue;

    iii.    improperly excused [Mr. Schmotzer] who would have identified a key source of information on an ex parte communication by wrongfully declaring hearsay; and

    c)  the [trial court] failed to appoint an out of county judge to hear the motion, in each instance and collectively denying [McCullough] the opportunity to develop his claim in violation of his rights to due process of law under the constitutions of the United States and the Commonwealth?

McCullough's Brief at 4-5 (unnecessary capitalizations omitted).[11]

We begin our analysis by addressing McCullough's third issue. McCullough argues that the trial court abused its discretion when it made evidentiary and other rulings at the November 19, 2015 hearing on his recusal petition, depriving him of the ability to flesh out facts, much less develop a record. In support, McCullough specifically asserts that the trial court abused its discretion in (1) finding Judge Nauhaus incompetent to testify under Rule 605; (2) allowing Attorney Pushinsky to seek a full, instead of a limited, waiver of attorney-client privilege before testifying; (3) allowing Mr. Schmotzer to withhold the identity of his source who allegedly communicated with Judge Nauhaus' secretary about McCullough's pending trial; and (4) failing to appoint an out-of-county judge. We address the claims seriatim.

_____

[11] At this juncture, based upon our disposition of this case, we need not address McCullough's first two issues, implicating the sufficiency of the evidence.

McCullough claims that the trial court abused its discretion in excusing Judge Nauhaus, under Rule 605, from testifying at the evidentiary hearing. The Commonwealth agrees. Commonwealth's Brief at 53.

Rule 605 provides that "the presiding judge may not testify as a witness at the trial or other proceeding." Pa.R.E. 605. The Comment to Rule 605 provides in pertinent part:

> This rule differs from the first sentence of F.R.E. 605 with the inclusion of "or other proceeding." [Rule] 605 makes a judge absolutely incompetent to be a witness on any matter in any proceeding at which the judge presides. Cf. Municipal Publications, Inc. v. Court of Common Pleas, 489 A.2d 1286 (Pa. 1985) (applying former Canon 3C of the Pennsylvania Code of Judicial Conduct, and holding that at a hearing on a motion to recuse a judge, the judge himself could not testify on the issues raised in the motion and continue to preside at the hearing)[.]

Pa.R.E. 605 cmt.

In Municipal Publications, Inc., James Reginald Edgehill filed a libel action against Municipal Publications, Inc., D. Herbert Lipson, and Alan Halpern. The trial judge heard the matter without a jury and ultimately entered a verdict in favor of Edgehill for $7,000,000.00. Prior to the entry of the verdict, the defendants filed a motion for recusal, alleging that the trial judge was biased in favor of Edgehill's counsel. The judge had originally assigned the recusal motion to the motions court, but he later vacated that order and scheduled a hearing before himself, during which he provided testimony.

The defendants subsequently filed a petition for a writ of prohibition with this Court, seeking to bar the common pleas court judge from ruling on the recusal motion. We granted the defendants' petition and directed the president judge to appoint a judge from another county to decide the recusal motion. Edgehill then appealed to our Supreme Court, which held that it, not this Court, had jurisdiction to entertain the prohibition action. In so holding, the Court observed that, under Section 741 of the Judicial Code, this Court only had jurisdiction "in cases of mandamus and prohibition to courts of inferior jurisdiction where such relief is ancillary to matters within its appellate jurisdiction." 42 Pa.C.S.A. § 741. Because no appeal was pending before us, the Court held that we lacked jurisdiction to entertain the prohibition action.

The Court then proceeded to decide whether a common pleas court judge should be disqualified from presiding over a hearing on a recusal motion raising factual allegations as to his or her impartiality that, if proven, would require his or her recusal, where the judge has personal knowledge of disputed facts. The Court determined that the allegations upon which the recusal motion was based focused upon an alleged personal relationship between the trial judge and counsel for Edgehill in the libel suit, and specifically upon alleged ex parte discussions between them in chambers concerning the case, including the recusal motion. The Court concluded that, in such circumstances, a judge must recuse himself and the issue of impartiality must be litigated before and decided by another judge. Municipal Publications, Inc., 489 A.2d at 1289 ("Where the disqualification hearing brings in question

the credibility of the judge, it is obvious that the judge is not in the position to maintain the objective posture required to preside over the proceeding and to assume the role of the trier of fact in that proceeding."). The Court recognized that a common pleas court judge can be called as a witness at a disqualification hearing.

Instantly, it appears that consistent with Municipal Publications, Inc., Judge Nauhaus dutifully referred the recusal petition to PJ Manning, who eventually conducted an evidentiary hearing, at which Judge Nauhaus appeared. Despite appearing at the hearing, however, Judge Nauhaus successfully sought to have himself declared incompetent to testify under Rule 605. As noted, Judge Nauhaus argued that, if he were forced to testify, his testimony likely would lead to his eventual recusal because he would become McCullough's adversary and thus woud no longer be able to preside over the underlying action. In other words, Judge Nauhaus argued that his testimony should be required only if PJ Manning found that McCullough presented sufficient other evidence to compel Judge Nauhaus' recusal from the underlying action.

Based upon our plain reading of Rule 605, we agree with McCullough's and the Commonwealth's shared contention that the trial court abused its discretion in finding Judge Nauhaus incompetent to testify at the November 19, 2015 evidentiary hearing. As the Commonwealth observes, in referring the recusal petition to PJ Manning and asking him to hold the evidentiary hearing, Judge Nauhaus, in essence, recognized that "he could not preside

over the hearing." Commonwealth's Brief at 53. Moreover, Judge Nauhaus' referral of the recusal petition to PJ Manning suggests that Judge Nauhaus recognized that the petition was not frivolous or wholly without foundation. Municipal Publications, Inc., 489 A.2d at 1290 ("[W]here fabricated, frivolous or scurrilous charges are raised against the presiding judge during the course of the proceeding, the court may summarily dismiss [them] without hearing where the judge is satisfied that the complaint is wholly without foundation."). Nonetheless, because Judge Nauhaus did not preside over the hearing, it becomes clear that Rule 605 was inapplicable sub judice and that the trial court, i.e., PJ Manning, abused its discretion in relying upon Rule 605 to find Judge Nauhaus incompetent to testify.

Here, Judge Nauhaus' testimony is crucial for McCullough to develop a record on the recusal petition. As McCullough notes, the substance of the allegations in his recusal petition principally implicate Judge Nauhaus. McCullough asserts that Judge Nauhaus allegedly behaved in a way that called into question the integrity of the entire proceeding. McCullough alleges that Judge Nauhaus directly, and ex parte, called Attorney Pushinsky to "yell at him" for filing a habeas petition. McCullough's Brief at 52. Although Attorney Pushinsky allegedly "was shaken" by this incident, he advised McCullough not to seek Judge Nauhaus's recusal. Id. McCullough alleges that Judge Nauhaus once again engaged in ex parte communication with Attorney Pushinsky when he had a friend instruct Attorney Pushinsky to go non-jury. McCullough argues that Attorney Pushinsky allegedly passed along the message to McCullough

and advised him that Judge Nauhaus preferred non-jury trials except in capital cases. McCullough claims that Attorney Pushinsky assured him that "he would not be sand-bagged" if he agreed to go non-jury. Id. McCullough also alleges that Judge Nauhaus, as discussed infra, engaged in an ex parte communication with his secretary during the pendency of his trial to consider the charges upon which he would be found guilty, even though Judge Nauhaus suggested at that point in time the charges had not been proven. This allegation insinuates that Judge Nauhaus relied upon evidence outside of the record to find McCullough guilty of ten counts upon which he was charged.

Moreover, as noted earlier, at the November 9, 2015 hearing, when Judge Nauhaus addressed the allegations in the recusal petition, he objected only to the use of the term "ex parte" to characterize the alleged communications with Attorney Pushinsky. In sum, given the seriousness of the allegations and Judge Nauhaus's decision to refer the petition to PJ Manning, we conclude that the trial court abused its discretion in finding Judge Nauhaus incompetent to testify at the evidentiary hearing under the auspices of Rule 605. Thus, consistent with Municipal Publications, Inc., Judge Nauhaus may be called as a witness to testify.[12]

---

[12] We reviewed Rule 605 counterparts in other jurisdictions. It appears that the majority of the jurisdictions have adopted Federal Rule of Evidence 605, which provides that "[t]he presiding judge may not testify as a witness at the trial." Consistent with Federal Rule 605, the rule 605 of evidence in other jurisdictions lacks the language "or other proceeding," which is found in our Rule 605, as quoted above.

We next address McCullough's contention that the trial court abused its discretion in requiring him to furnish a complete waiver of attorney-client privilege before allowing McCullough to question Attorney Pushinsky about his interactions and communications with Judge Nauhaus. On this issue, we note the Commonwealth agrees with McCullough that the trial court erred in accepting Attorney Pushinsky's demand for a full waiver to cover all possible matters. See Commonwealth's Brief at 54-55.

Section 5916 of the Judicial Code codifies the attorney-client privilege, as it pertains to criminal matters, as follows:

> In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5916. Section 5916, however, is silent as to a limited waiver. At issue here is whether McCullough can waive the attorney-client privilege only as to the matters at hand. He may. In Commonwealth v. Chmiel, 738 A.2d 406, 414 (Pa. 1999), our Supreme Court considered whether a client's attack on the competence of counsel served as a waiver of the privilege only as to the matter in dispute. In finding that limited waivers are permissible, the Court held that a party who attacks the competence of his or her counsel cannot rely on the attorney-client privilege to prevent counsel from responding to those attacks. Id. This does not automatically operate as a wholesale waiver of the privilege. A client's attack on the competence of

- 37 -

counsel serves as a waiver of the privilege only as to the matter at issue. In reaching this conclusion, the Court acknowledged there already was implicit in our case law the limitation that a client's attack on his former counsel's competence waives the privilege only as to that matter. Id. at 414 (citing Doll v. Loesel, 136 A. 796, 798 (Pa. 1927), Commwealth v. Warren, 399 A.2d 773, 779, n.6 (Pa. Super. 1979), and Commonwealth v. Ferri, 599 A.2d 208, 212 (Pa. Super. 1991)).[13,14] Accordingly, the testifying counsel in Chmiel was permitted to disclose conversations he had with his client to rebut the client's allegations of ineffectiveness.

While it was counsel who sought the limited waiver in Chmiel, as opposed to the instant proceedings where the client (McCullough) sought a limited waiver of the privilege, we discern this difference to have no significance. The privilege belongs to the client. The client's conduct is what operates to waive the privilege. In Chmiel, the client's attack on counsel's effectiveness waived the privilege for the limited purpose of counsel responding to those claims. Here, the client affirmatively announced his

_____

[13] Subsequent to Chmiel's post-conviction hearing, the legislature amended the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46, in 1995 to expressly provide that when a claim for relief is based on an allegation of ineffective assistance of counsel, any privilege concerning counsel's representation as to that issue is automatically terminated. Id. at § 9545(d)(3). The Court's decision on the availability of limited waiver was unaffected by this legislative amendment because, as stated, there already was implicit in our case law authority for a limited waiver. Id.

[14] This principle also is consistent with Rule of Professional Conduct 1.6(c). See supra footnote 9.

intention to waive the privilege for a limited purpose. In both instances, the client determined whether to waive privilege and the extent of that waiver.

Here, McCullough desires to waive privilege for the limited purpose of addressing the allegations in his recusal petition. Counsel may no longer claim attorney-client privilege as a basis not to answer questions within the scope of McCullough's limited waiver. The question becomes not whether there may be a limited waiver of privilege, but rather, the scope of the limited waiver. Chmiel teaches that the scope of a limited waiver is restricted to the matter in dispute.

Instantly, McCullough, on the record, provided Attorney Pushinsky with a limited waiver of his attorney-client privilege so that McCullough could ask Attorney Pushinsky about his interactions and communications with Judge Nauhaus. Specifically, McCullough waived the privilege as to the alleged habeas communication and the non-jury communication. See N.T. Hearing, 11/19/15, at 25. Attorney Pushinsky, however, insisted on a complete waiver of privilege, fearing repercussions should McCullough not be satisfied with his answers. The trial court agreed, and allowed Attorney Pushinsky to remain silent unless McCullough granted him a full waiver of privilege. We, however, are constrained to agree with McCullough and the Commonwealth. The record reveals not only that McCullough granted Attorney Pushinsky a limited waiver with respect to the alleged communications with Judge Nauhaus, but also that Attorney Pushinsky's fear of overstepping any limited waiver was not founded, as some of counsel's questions only required simple "yes" or "no" answers.

See id. at 36. Moreover, as we recognized in the cases cited above, a partial waiver of attorney-client privilege is an acceptable method of allowing an attorney to testify about issues that arose during his or her representation of a client. Thus, we conclude that the trial court abused its discretion in requiring a full waiver of privilege from McCullough before allowing Attorney Pushinsky to testify about his alleged communications with Judge Nauhaus directly and indirectly through a mutual friend.

We now turn to McCullough's claim that the trial court abused its discretion in allowing Mr. Schmotzer to withhold, in the absence of any recognized privilege, the identity of a person who had a conversation with Judge Nauhaus's secretary as to how the guilty verdicts were decided. This unknown person, a courthouse employee, allegedly told Mr. Schmotzer that Judge Nauhaus and his secretary predetermined the guilty verdict before the evidence closed and at a time when Judge Nauhaus did not believe the Commonwealth had proven its case. The Commonwealth argues that McCullough waived this issue because he failed to request that Mr. Schmotzer be held in contempt. Upon review, we agree with McCullough.

As detailed above, in his recusal petition McCullough alleged that Mr. Schmotzer informed him that Mr. Schmotzer had learned through a courthouse employee that Judge Nauhaus consulted with his secretary during the pendency of McCullough's trial to decide McCullough's case. According to McCullough's allegations, the courthouse employee informed Mr. Schmotzer that Judge Nauhaus initially expressed doubts about the sufficiency of the

Commonwealth's evidence. However, upon consultation with his secretary while McCullough's case was ongoing, Judge Nauhaus allegedly agreed that McCullough should be convicted of the five counts dealing with the checks. At the evidentiary hearing, however, Mr. Schmotzer refused to reveal the identity of the courthouse employee to whom the secretary recounted her conversations with Judge Nauhaus and failed to assert any privilege for doing so. McCullough's allegation of ex parte communication involving Judge Nauhaus's secretary is troubling because it suggests that Judge Nauhaus relied upon influences outside of the record to form an opinion regarding McCullough's guilt prior to the close of evidence. Indeed, it is alleged Judge Nauhaus found McCullough guilty of the same crimes allegedly predetermined in the conversation with his secretary. If those allegations have merit, then McCullough has a very colorable claim that he was denied due process. It is well established that "[a] trial court may not consider evidence outside of the record in making its determination. Nor may this Court uphold a trial court's order on the basis of off-the-record facts." Ney v. Ney, 917 A.2d 863, 866 (Pa. Super. 2007) (internal citations and quotation marks omitted).[15] The

_____

[15] This principle is well-ensconced in our Suggested Standard Criminal Jury Instructions ("Pa.S.S.J.I."), which apply equally in substance to a trial judge sitting as factfinder. Specifically, Pa.S.S.J.I. §§ 2.05 and 2.06, pertaining to avoiding premature opinions and outside influence when not sequestered, provide:

    2.05 AVOIDING PREMATURE OPINIONS

_____

1. Each of you must keep an open mind throughout the trial.  In the oath you just took you swore to do so.  You should avoid forming opinions about the guilt or innocence of the defendant or about any other disputed question until the trial is ended and you begin your deliberations.

2. Do not talk with each other about the evidence or any other matter relating to whether the defendant has been proven guilty until I send you to the jury room to deliberate on your verdict.  Only then will you know enough about the evidence and the law to discuss the case intelligently and fairly.

2.06 AVOIDING OUTSIDE INFLUENCE (JURY NOT SEQUESTERED)

1. Our system of criminal law allows you to consider only the evidence, arguments, and legal instructions that are presented during the course of the trial.  You must avoid anything that might result or appear to result in your being exposed to outside information or influence.  Allowing outside information to affect your judgment is unfair and prejudicial to the parties and could lead to this case having to be retried.  Therefore, you must not communicate with anyone else about the case or listen to others talk about the case until the trial is completely over and I discharge you.

2. By "communicate," I mean more than just not talking face-to-face with people about the case.  You are not to communicate with anyone about the case by cell phone, text message, e-mail, or by posting information about the case or what you are doing as a juror on any website like Facebook, Twitter, Google, or other similar websites.

3. You cannot even discuss the case with members of your family, close friends, court personnel, or other members of the jury.  Thus, you must not have any conversations, even casual conversations, with the defendant, counsel for either side, any witnesses, or other members of the jury.

4. Do not read, listen to, or watch anything about the case in newspapers or magazines, or on radio or television, or the Internet.

purpose of this rule is self-evident. It ensures that a jury will not undermine a defendant's due process rights to a fair and impartial trial by forming opinions about the defendant's guilt or innocence by obtaining information outside of the record. It is long settled that "[t]he minimal standards of constitutional due process guarantees to the criminally accused a fair trial by [an impartial and indifferent factfinder]." Commonwealth v. Stewart, 295 A.2d 303, 304 (Pa. 1972). Thus, McCullough's due process rights would be implicated if Judge Nauhaus in fact had off-the-record conversations prior to the close of evidence with his secretary in which he discussed and/or predetermined McCullough's case.[16] We conclude the trial court at the November 19, 2015 evidentiary hearing abused its discretion in allowing Mr. Schmotzer to withhold the identity of the courthouse employee with whom the secretary shared her alleged conversation with Judge Nauhaus. The trial court's ruling is especially concerning because, as the record indicates,

_____

> 5. Do not try to get information relevant to the case on your own. Do not make any investigation, do any research, visit the scene, or conduct any experiment. Do not conduct any Internet search about the facts of the case, the participants, or the law regarding these matters.
>
> 6. Your only information about this case must come to you while you are all together, acting as a jury, in the presence of me, the attorneys, and the defendant.

Pa.S.S.J.I. (Criminal) §§ 2.05 and 2.06 (2012) (emphasis added).

[16] We take this opportunity to emphasize that the allegations in McCullough's petition are just that—allegations. No findings have yet been made as to whether these allegations will bear out in fact.

Mr. Schmotzer failed to assert any privilege as to his communication with the courthouse employee.

To the extent the Commonwealth argues McCullough waived his argument as to the withholding of Mr. Schmotzer's testimony because he did not move that Mr. Schmotzer be held in contempt, such argument lacks merit. Generally, the purpose of contempt is to coerce a person to comply with a court order, or to punish a person for disobeying a court order. In re Martorano, 346 A.2d 22, 27-29 (Pa. Super. 1975). Instantly, our review of the record demonstrates that PJ Manning did not order Mr. Schmotzer to answer McCullough's query regarding the identity of the courthouse employee. On the contrary, PJ Manning expressly excused Mr. Schmotzer from answering the query. See N.T. Hearing, 11/19/15, at 16. As a result, we fail to see how McCullough could have moved for contempt when PJ Manning never instructed Mr. Schmotzer to answer the query. In other words, Mr. Schmotzer never violated or disobeyed a trial court order and therefore, no basis existed for McCullough to seek contempt. Accordingly, the Commonwealth's assertion of waiver lacks merit.

We finally address McCullough's claim that the trial court abused its discretion in denying his request for the appointment of an out-of-county judge.

At the outset, we recognize that "our judges are honorable, fair and competent." Commonwealth v. King, 839 A.2d 237, 239 (Pa. 2003). "It is the burden of the party requesting recusal to produce evidence establishing

bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." Commonwealth v. Abu-Jamal, 720 A.2d 79, 89 (Pa. 1998) (citations omitted). Here, the gravamen of McCullough's recusal petition concerned the alleged impropriety and partiality of only Judge Nauhaus in that he allegedly engaged in ex parte communications. McCullough did not raise any allegations against other judges on the Allegheny County bench. More importantly, McCullough did not suggest there was an appearance of impropriety that would apply equally to all judges on the Allegheny County bench. See Lomas v. Kravitz, 130 A.3d 107 (Pa. Super. 2015) (en banc) (the defendant sought the recusal of the entire Montgomery County bench based on the appearance of impropriety created by the fact that one sitting judge had an ongoing pecuniary interest in the outcome of the case), aff'd, 170 A.3d 380 (Pa. 2017).

As we noted earlier, in response to the Commonwealth's request for an evidentiary hearing, McCullough argued broadly for whole bench recusal, without providing any basis to justify his position that "a judge from outside of Allegheny County" be appointed to preside over the evidentiary hearing. Response to Evidentiary Hearing, 11/16/15, at ¶ 2. Thus, McCullough's request for an out-of-county judge to preside over the evidentiary hearing was devoid of any record support or legal authority. McCullough provided no basis for the recusal of the entire bench because he failed to allege actual impropriety or an appearance of impropriety against every jurist. Even in his brief, McCullough offers no explanation or argument for the recusal of the

entire Allegheny County bench. Accordingly, McCullough is not entitled to relief on this issue.

In light of the trial court's abuse of discretion with respect to excusing Judge Nauhaus and Attorney Pushinsky from testifying at the November 19, 2015 evidentiary hearing, and allowing Mr. Schmotzer to withhold the identity of the courthouse employee, we remand this case to the trial court with instruction to conduct a new evidentiary hearing on the recusal petition. Thus, if following the evidentiary hearing on the recusal petition, the trial court determines that McCullough's petition has merit, the case must be returned to this Court within thirty (30) days of the trial court's determination so that we may order a new trial and relinquish jurisdiction. If, however, the trial court determines that McCullough merits no relief on his recusal petition, then McCullough may challenge the trial court's determination. If McCullough challenges the trial court's determination, the trial court shall order him to file a supplemental Rule 1925(b) statement. In response, the trial court shall issue a supplemental Rule 1925(a) opinion within thirty (30) days of its receipt of McCullough's supplemental Rule 1925(b) statement. The original record shall be returned to this Court within thirty (30) days of the filing of the supplemental Rule 1925(a) opinion. This Court shall then decide those remaining issues preserved in the instant appeal and in a supplemental Rule 1925(b) statement.

Case remanded for further proceedings consistent with this opinion. Jurisdiction retained.

- 47 -

Judge Shogan joins this opinion.

President Judge Emeritus Ford Elliott files a dissenting opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/19/2018