J-A26003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES P. MCCULLOUGH | : | |
| | : | |
| Appellant | : | No. 164 WDA 2025 |

Appeal from the PCRA Order Entered January 16, 2025
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0010522-2009

BEFORE: STABILE, J., KING, J., and BECK, J.

MEMORANDUM BY STABILE, J.:          **FILED: December 31, 2025**

Appellant, Charles P. McCullough, seeks review of an order denying his motion to disqualify the Allegheny County District Attorney's Office (DA's Office) from prosecuting his pending PCRA[1] action. In 2015, Appellant was found guilty of misappropriating his client's funds; he was sentenced to an aggregate prison term of 2.5 to five years, and the judgment of sentence was affirmed. After commencing the PCRA action 2021, he moved to disqualify the DA's Office on the ground that a witness at a prior recusal hearing (Janine McVay) is related to the Allegheny County District Attorney, Stephen Zappala. As will be explained below, we are constrained to quash this appeal for lack of jurisdiction because it arises from a non-final interlocutory order which is not a "collateral order" for purposes of Pa.R.A.P. 313.

_____

[1] Appellant has sought relief pursuant to the Post Conviction Relief Act (42 Pa.C.S.A. §§ 9541-9546 (PCRA).

The underlying facts relevant to this appeal are as follows. In 2006, an elderly widow (now deceased) retained Appellant as an attorney, granting him power of attorney over her financial assets. Thereafter, Appellant was criminally charged with several counts relating to his personal use of his client's property. On July 31, 2015, at a non-jury trial before the Honorable Lester G. Nauhaus, Appellant was found guilty of five counts of unlawful taking, and five counts of misapplication of entrusted property.

Appellant's trial counsel was Jon Pushinsky, Esq. Prior to Appellant's sentencing, Attorney Pushinsky withdrew from the case, and Appellant retained a new attorney, Megan Will, Esq., to represent him. Appellant then, through his counsel, petitioned to have Judge Nauhaus recused from the case on the ground that he had engaged in *ex parte* communications with Attorney Pushinsky and court employees before rendering the verdict.

One of those alleged *ex parte* communications was a conversation between Judge Nauhaus and his secretary, Peggy Moore. Appellant asserted that Moore had confided to another courthouse employee that she had discussed Appellant's case with Judge Nauhaus while it was still pending. Judge Nauhaus purportedly told Moore that he did not think the charges against Appellant had been proven, but Moore convinced him that Appellant should still be convicted.

Appellant allegedly learned about this conversation from his acquaintance, Martin L. Schmotzer. So, in sum, the allegation was that (i) Judge Nauhaus spoke to Moore about Appellant's case, and decided to convict

Appellant despite insufficient evidence of guilt; (ii) Moore relayed the conversation to a courthouse employee; (iii) the courthouse employee relayed the conversation to Schmotzer; and (iv) Schmotzer relayed the conversation to Appellant.

At the hearing on Appellant's recusal petition held on November 19, 2015, President Judge Jeffrey A. Manning presided. Of relevance here, PJ Manning allowed Schmotzer to withhold the name of the above-mentioned courthouse employee who had purportedly informed him of the communications between Judge Nauhaus and Moore. PJ Manning also excused Judge Nauhaus and Attorney Pushinsky from testifying.[2]

Appellant appealed those rulings, and this Court found in his favor, holding that PJ Manning had abused his discretion. *See Commonwealth v. McCullough*, 201 A.3d 221 (Pa. Super. 2018). The case was remanded for a new evidentiary hearing on Appellant's recusal petition. *See id*., at 245.

The new evidentiary hearing was held on May 1, 2019, and the Honorable David R. Cashman presided. Both Judge Nauhaus and Attorney Pushinsky took the stand, as did several other witnesses, including Moore and Judge Nauhaus. It was revealed at this juncture that the courthouse employee was McVay. Although McVay testified that she knew Schmotzer, she denied

_____

[2] Another *ex parte* communication alleged by Appellant concerned telephone calls between Judge Nauhaus and Attorney Pushinsky. In one call, Attorney Pushinsky was allegedly urged to forego a jury trial; another call concerned a petition for writ of *habeas corpus* filed by Attorney Pushinsky on behalf of Appellant.

having ever discussed Appellant's case with Moore, Schmotzer, or anyone else. Judge Nauhaus and Moore also testified along the same lines.

At the conclusion of the hearing, Judge Cashman ruled that Appellant's recusal petition lacked merit. Moore, McVay, and the other witnesses who testified regarding the alleged *ex parte* communications of Judge Nauhaus were found credible. Schmotzer, who testified consistently with his earlier account, was not found credible.

On direct appeal, Appellant sought review of the order denying his recusal petition. He also contended that his convictions had to be overturned due to the insufficiency of the evidence. This Court affirmed, finding that the evidence of Appellant's guilt was legally sufficient, and that the trial court had not committed an abuse of discretion in denying the petition to recuse. **See Commonwealth v. McCullough**, 230 A.3d 1146 (Pa. Super. 2020), **reargument denied**, (July 6, 2020), **appeal denied**, 249 A.3d 244 (Pa. 2021).

Subsequently, Appellant filed a *pro se* PCRA petition, on November 8, 2021, asserting numerous ineffectiveness claims. A week later, on November 15, 2021, he filed the pleading which is the subject of the present appeal, a "motion to disqualify the Allegheny County [DA's] Office." In that latter motion, Appellant asserted that McVay was the sister-in-law of DA Zappala, entitling Appellant to the disqualification of the DA's Office and the assignment of the Office of the Attorney General to prosecute the PCRA action.

The logic of the argument is difficult to follow, but according to Appellant, McVay had previously lied during the prior recusal proceedings as to what Moore had conveyed to her about her conversations with Judge Nauhaus. Were McVay to testify at a future PCRA proceeding, so Appellant's argument goes, McVay's familial relationship with DA Zappala would create an actual conflict of interest for the DA's Office, which would be bound to prosecute her for perjury. Appellant insists that, if consistent with her prior account at the recusal proceedings, McVay's potential testimony at a PCRA hearing (about what she had discussed with Moore) would be a lie.[3]

On September 19, 2024, the PCRA action was assigned to Senior Judge Patrick T. Kiniry, of Cambria County. The Commonwealth responded to Appellant's motion to disqualify the Allegheny County DA's Office on October 31, 2024. Judge Kiniry entered an order summarily denying that motion on January 15, 2025. Appellant timely appealed on February 12, 2025.

Judge Kiniry filed a 1925(a) opinion giving the reasons why the order on review should be upheld. *See* PCRA Court 1925(a) Opinion, 5/28/2025, at 4-12. In the opinion, Judge Kiniry reasoned that it was dubious that the Office of the Attorney General could be assigned as Appellant had requested. And regardless, Appellant had not established an actual conflict of interest on the

_____

[3] Appellant has cited no controlling rule or decisional law which would have compelled McVay to disclose her familial relationship with DA Zappala. Nor has he cited any authority which would require the disqualification of the DA's Office on that basis. We would also add that McVay was never asked about that fact during her testimony at the recusal proceedings.

part of DA Zappala that would prevent the DA's Office from prosecuting the PCRA action. *See id*., at 6-11. Nor could Judge Kiniry grasp how there could be a conflict based on McVay's purported "perjury" at a future PCRA hearing when her testimony at the recusal proceedings had already been found credible:

> As to [Appellant's] assertion that an actual conflict now exists because McVay perjured herself during the recusal hearing, no evidence of record exists to support this allegation. [Appellant's] argument in this regard rests solely on his belief that a witness favorable to him, Schmotzer, testified truthfully while McVay offered perjured testimony with regards to information relating to purported improper actions by Judge Nauhaus.

*See id*., at 9.

On May 5, 2025, this Court directed Appellant to show cause why his appeal from the denial of his motion to disqualify should not be quashed as interlocutory, as arising from a collateral and non-final order which is not immediately appealable. Appellant filed a response to the show cause order on May 12, 2025, arguing in relevant part that the appeal should not be quashed because he will lose eligibility for PCRA relief once his current period of parole has expired. This Court then entered a *per curiam* order on May 21, 2025, stating that the issue of appealability at this juncture would be referred to the merits panel assigned to this case.

In his brief, Appellant now raises the following issues for our consideration:

> 1. Is the PCRA Court's January 15, 2025 Order appealable as of right as a collateral order pursuant to Pa.R.A.P. [] 313?

2. Did the PCRA Court have jurisdiction to consider a Motion to Disqualify the Allegheny County [DA's] Office?

3. Did the PCRA Court commit an error of law or an abuse of discretion when, upon being presented with a Motion to Disqualify the Allegheny County [DA's] Office that alleges a conflict of interest, it denied Appellant his 14th Amendment Due Process rights when it disposed of the Motion without a hearing and only upon submission by the parties of a statement of authority as to whether or not the lower court had the authority to disqualify the [DA's] Office?

4. Should the Order of the PCRA Court, which denied Appellant's Motion to Disqualify the Allegheny County [DA's] Office, be reversed and that Office disqualified from further involvement in the instant PCRA proceedings when:

a. A critical and material witness is the sister-in-law of the Allegheny County [DA]; and/or

b. That Office engaged in a cover-up of her identity in a remanded recusal hearing?

5. Did Appellant waive or is he otherwise foreclosed of the ability to call witnesses, including the sister-in-law of the [DA] and members of his Office at a hearing on the aforesaid Motion to Disqualify or at the hearing on Appellant's PCRA petition as a consequence of the oral argument conducted by the trial court on January 14, 2025 and/or is said Motion moot, time barred and/or meritless?

Appellant's Brief, at 4-6.

Appellant's first issue is dispositive, as his PCRA proceedings are still pending, and this Court only has jurisdiction to consider this appeal's merits if the order on review qualifies as a "collateral order" under Pa.R.A.P. 313.

Generally, only final orders are immediately reviewable as of right. **See** Pa.R.A.P. 341(a); **see also Commonwealth v. Flor**, 136 A.3d 150, 154-55

(Pa. 2016); ***Commonwealth v. Williams***, 86 A.3d 771, 780 (Pa. 2014). The appealability of an order implicates the jurisdiction of an appellate court to consider an appeal's merits. ***See Beltran v. Piersody***, 748 A.2d 715, 717 (Pa. Super. 2000). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review is plenary." ***Commonwealth v. Merced***, 265 A.3d 786, 789 (Pa. Super. 2021).

An order is final for purposes of appeal if it "disposes of all claims and of all parties." ***See*** Pa.R.A.P. 341(b)(1). One exception to this general rule (which Appellant invokes here) is that a non-final order may be immediately appealed if it is a "collateral order" for the purposes of Pa.R.A.P. 313. This rule provides that an appeal may be taken from a non-final order if the following three prongs are met:

> (1) the order must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and ***(3) the question presented must be such that if review is postponed until after final judgment, the claim will be irreparably lost***.

***Commonwealth v. Harris***, 32 A.3d 243, 248 (Pa. 2011) (citing Pa.R.A.P. 313(b)) (emphasis added).

Here, setting aside whether Appellant's claim has underlying merit, it is evident that Appellant cannot satisfy all three prongs of the test for a collateral order. We focus at the outset on the third prong, "irreparable loss." A party suffers irreparable loss in this context when the loss is not "fully remediable after final judgment." ***Commonwealth v. Blystone***, 119 A.3d 306, 313 (Pa. 2015).

- 8 -

Appellant argues that this prong is satisfied because if appellate review is denied, he will complete his parole before his PCRA claims have been resolved on the merits. Post-conviction relief under the PCRA would only be available to Appellant for as long as he is subject to that prison term. Once the maximum term of his prison sentence, or his remaining term of parole, has expired, he will no longer be statutorily eligible for PCRA relief. **See** 42 Pa.C.S.A. § 9543(a)(1) (stating rule that to be eligible for PCRA relief, a petitioner must currently be serving a sentence of "imprisonment, probation or parole").

However, as outlined above, Appellant was sentenced to an aggregate prison term of 30 to 60 months. He began serving that term on April 6, 2021. After serving 22.5 months, on February 19, 2023, Appellant was released on parole. As of that time, Appellant still had 37.5 months to be completed on parole until he reached the maximum prison term of his sentence. Accordingly, Appellant's parole will terminate no later than ***April 6, 2026***.

Appellant filed the present PCRA action over four years ago. Since the PCRA action is still pending and may be resolved prior to the end date of his parole, Appellant may yet have his post-conviction rights vindicated by the PCRA court if this Court declines to exercise jurisdiction to resolve the present appeal on the merits. Thus, this appeal must be quashed.[4]

---

[4] In **Commonwealth v. Turner**, 80 A.3d 754 (Pa. 2013), our Supreme Court held that the constitutional right to due process is not implicated when a
*(Footnote Continued Next Page)*

On remand, we would strongly encourage the PCRA court to give prompt attention to this matter to ensure that Appellant does not lose any post-conviction rights he is legally entitled to. If necessary to resolve Appellant's outstanding PCRA claims on remand, the PCRA court should hear argument or hold an evidentiary hearing as soon as is reasonably practicable.

Appeal quashed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/31/2025

---

petitioner loses PCRA eligibility upon the completion of a sentence. *See **Turner***, 80 A.3d at 765 "[D]ue process does not require the legislature to continue to provide collateral review when the offender is no longer serving a sentence."). This is especially so when the petitioner is responsible for the delay in the disposition of the PCRA proceedings. ***See id***., at 769 ("[T]o the extent that due process guarantees an opportunity to be heard on her ineffectiveness claim, Petitioner was afforded an opportunity to be heard within the limitations imposed by the PCRA under the facts of this case . . . . Yet Petitioner neither requested expedited consideration nor raised her claim earlier to afford more time for review.").

Here, Appellant filed his motion to disqualify the DA's Office on November 15, 2021. It is unclear to us why the 2021 motion only was decided in January 2025, but we do note a significant amount of docket activity from the time of the motion's filing to this appeal.